## JOHN NICKLES, RESPONDENT, v. DANIEL H. WELLS ET AL., APPELLANTS.

1. TIMBER AGENTS, COMPROMISE BY.—Under the act of Congress pun-
ishing trespassers on public lands for cutting timber without authority,
the Government is not bound by any compromise made by its timber
agent, unless such agent has regularly pursued his authority.

2. ANOTHER ACTION PENDING, EFFECT OF.—Where plaintiff obtains
his title from the Government, he is not bound by the records in another
suit to which he was not a party, although in such suit the title to the same
property was involved.

3. INSTRUCTIONS, HOW REVIEWED.—It is not proper to point out a
single instruction, and claim it to be objectionable of itself, but all the
instructions must be considered together.

Appeal from the Third Judicial District Court.
The facts appear in the opinion.

*Sutherland & Kimball*, for appellants.

The defendants in the action of *Wells* v. *Patton* were not
officers, but mere private agents, of the United States as a cor-
poration, which is vested with the same rights of action and
to take its own property as a private citizen has. *Dugan* v.
*U. S.*, 3 Wheat. 181; see circular in Record, 1855.

The land department assumes the agency of timber by
reason of its general functions under the land laws. *Stephen-
son* v. *Little*, 10 Mich.

The United States could not be sued, but its agents could,
and the judgment made indirectly to affect the principal.
*Osborn* v. *U. S. Bank*, 9 Wheat. 738.

These points are expressly decided in an action where such a remedy was sought by injunction. See also *Ryan* v. *Brown*, 18 Mich. 196, 212.

The case of *Wells* v. *Patton et al.*, was a case which invoked that jurisdiction; and, although dismissed on demurrer, it is available for the purpose we had in view in offering it on the trial of this action.

It was not the judgment in the case that was deemed important. The record was offered in evidence to show that a suit was pending to obtain an equitable adjustment of the amount due the Government for the timber in controversy, that it might be paid, and thereby the additional value added to the property by the labor of the plaintiff be saved from sacrifice, and that in consideration of security the timber was released to Wells for his own use.

It is not necessary to say whether the court decided the demurrer correctly, it is enough that the court in that action had jurisdiction; that the complaint contained an offer to pay such sum as the court deemed equitable, and that the agents of the Government surrendered the logs to Wells on his paying the costs of the seizure and securing the payment of the judgment. See abstract of the complaint in printed abstract, p. 21–25; Stipulation, p. 5.

The discretionary power given by the instructions from the general land office to the timber agents authorized them to compromise a claim for timber, on the terms stated in the stipulation, without regard to the merits of the case as stated in the complaint in that action. *Hodgson* v. *Dexter*, 1 Cranch. 345; *Sheets* v. *Selden's Lesees*, 2 Wall. 177; *Stinchfild* v. *Little*, 1 Greenlf. 231; *State of California* v. *McCauley*, 15 Cal. 456–7. See also upon these points *Belden* v. *Laing*, 8 Mich. 500; *Morris* v. *DeWitt*, 5 Wend. 71; *Lowry* v. *Hall*, 2 Watts & S. 129, 133–4; *McKinrie* v. *Baltimore & O. R. R. Co.*, 28 Md. 161; Bigelow on Estoppel, 47; 1 Greenlf. Ev. § 535; *Prustly* v. *Fernie*, 3 Hurl. & Colt. 977; *Stoofs* v. *Woods*, 45

Cal. 439; *Bigelow* v. *Winsor*, 1 Gray, 302; *Stoddard* v. *Thompson*, 31 Iowa, 80.

And as that action was still pending when this action was brought, defendant Wells, and others acting under him, still had at that time a lawful possession.

A pre-emption settler has a rightful occupancy of government land, but the law does not in terms grant him the right to cut timber. He is, however, treated as having that right upon the lands included in his settlement "to the extent necessary for domestic purposes, for clearing, building, fencing, fuel, etc." See Commissioner's Letter, p. 13; Circular of 1855, §§ 3, 6, p. 10–11.

Utah, when organized as a Territory in 1850, was wholly government land and unsurveyed. It was nineteen years before a land office was established here. The Territory had definite limits; a Territorial Government was granted for a community fixed within those limits, and represented during all that period by a delegate in Congress.

The right of people to live here, and the intention of Congress that there should be a permanent settlement, were thus directly recognized and expressed. Had people living here been deemed trespassers they would have received notice to quit, and not invited to remain by providing a government for them. They were not organized to live here like savages, but as a civilized people, having all the wants, and needing just the supplies for subsistence and shelter that other communities have.

*Bennett & Harkness*, for respondent.

There was no error in excluding the records mentioned in the first, second and third assignments of error made by appellant. The respondent derives title to the property in question directly from the United States, and not through or under any of the defendants in those cases, and any judgment which could be rendered would not affect the title or right of possession of the government or its vendee.

The government can only act by agents, and the principle that it cannot be sued or enjoined would be useless if its property and rights can be bound, and the exercise of all governmental functions restrained by suit against its agents. The extent to which judicial power has been exercised against government officers is to enforce a purely ministerial act, which by law a party was entitled to have performed, and where no discretion could be exercised. *Marbury* v. *Madison*, 1 Cranch. 137; *Kendall* v. *U. S.*, 12 Pet. 524; *Decatur* v. *Paulding*, 14 Pet. 497; *Breasher* v. *Mason*, 6 How. 92; *U. S.* v. *McLemore*, 4 How. 287; *Hill* v. *U. S.*, 9 How. 388; *Walker* v. *Smith*, 21 How. 579; *Mississippi* v. *Johnson*, 4 Wall. 475; *Gaines* v. *Thompson*, 7 Wall. 347.

The first instruction merely recites what the plaintiff must prove to make a *prima facie* case, and those facts being proved and no excuse shown, the detention by legal construction is wrongful, and the charge must be considered in connection with the testimony. We see no objection to the second and third subdivisions of the instructions. The assignment of error on the fourth subdivision of the instructions, seems to be based on the rule of damages announced, but in this respect the charge is correct. Sedgewick on Damages, 498, 504; *Silsbury* v. *McCoon*, 3 Comstock, (N. Y.) 380.

There is no error in the fifth subdivision of the instructions, which allows interest. Sedgwick says it is the general rule, though in Indiana it is discretionary with the jury. Sedgewick, p. 501; *Dorsey* v. *Manlove*, 14 Cal. 553.

BOREMAN, J., delivered the opinion of the court:

Oliver A. Patton and V. M. C. Silva were respectively register and receiver of the land office in Salt Lake City, and, as such, they were timber agents of the United States Government, and Richard Greenway was, under the register and receiver, a deputy timber agent. These parties, as timber agents of the government, seized and sold for the government certain logs and lumber cut from government lands and sawed

John Nickles v. Daniel H. Wells et al.

at the mills owned and operated by the appellant, and on which no stumpage had been paid. At the sale the respondent became the purchaser, and leaving one Wilson to look after the property, went after and brought his teams to take the same away, but was prevented from doing so by appellant. Thereupon the respondent brought this action for the property or its value, and in the district court the verdict and judgment being for the respondent, the appellant, Wells, brings the case to this court.

It is alleged as error that the district court rejected the record in the case of *D. H. Wells* v. *O. A. Patton et al.*, begun in 1875, and in which it is averred that there was a compromise entered into between Wells on the one side and the timber agents on the other, as to a large part of the property now involved in this action. After the alleged compromise the suit proceeded, and the demurrer of the defendants therein was sustained to the complaint, and the suit dismissed by order of court.

The main if not the whole trouble in this case arises from a confounding of the individuals with the government. The title which the respondent claims comes from the government through its agents, and not from the agents as individuals owning the property.

The timber agents were, under certain circumstances, authorized to compromise such matters and release the property, but they had no power to do so except upon payment of the stumpage and also the expenses. In the case referred to, of *Wells* v. *Patton et al.*, the stumpage had not been paid. It was not, therefore, such a compromise as the agents were authorized to make, and the government was not bound to respect it. The agents were acting outside of and beyond their instructions, and whatever they should do under such circumstances could be ignored by the government without its losing any rights. Suppose that immediately after this alleged compromise the government had seen proper to have changed its timber agents, would it be pretended that the new agents

were bound to recognize as binding this unauthorized arrangement of their predecessors? Not at all. The acts of the agents are the acts of the government only so far as the agents keep within their line of duty and within the powers granted to them.

It cannot, therefore, be said that the respondent derived title from the same source that the appellant did; for the appellant obtained his title from an unauthorized compromise and act of an agent, which compromise and act the government chose not to recognize, and the respondent derives his title from the government through its authorized agents, acting within the scope of their authority. The respondent not having been a party to that suit is not bound by what was done in it.

It is likewise urged as error that the district court excluded another record, the record in the case of *Daniel H. Wells* v. *Patton and Greenway*, begun September, 16, 1876, for claim and delivery of this same property.

In that case Patton and Greenway, acting as timber agents, had seized the property for the government. They were acting strictly within the line of their duty as specified in their instructions from the general land office at Washington. Their possession was, therefore, the possession of the government, and the property could not be taken out of that possession by suit. Besides the action was not determined but was then pending, and the legal right to the property in abeyance so far as the parties to that action were concerned. The possession of Wells as against those two individuals may have been good, if the governmental rights be placed out of view, and yet it would not follow that Wells' right as against the government was valid. Hence it is a good objection to that record, as it was to the first one offered, that the respondent not having been a party to the action, and having obtained his title from the government, he cannot be held bound by that action.

The same reasoning would apply to the third record offered

John Nickles v. Daniel H. Wells et al.

and rejected, but the point as to its rejection is not raised in the brief of appellant, and we presume that no stress was laid upon it.

The instructions do not seem liable to the objections urged. Especial objection is taken to the court saying that to make a case to entitle the plaintiff to recover it is only necessary for him to show that the logs were cut on government land; that the timber agents seized it and sold it to plaintiff, and that the defendant delivered it, and if the defendants claim that the trespass was compromised they must show it. When taken in connection with the other instructions, we do not see that the jury could be misled, or that there was any error. It is not proper to single out one instruction and claim it to be objectionable in itself; all instructions must be considered together.

The instructions asked by the defendants, the appellants, were improper to be given to the jury, and were properly refused by the court. That instruction, in effect, declared that because the government had for a time failed to execute the law in this Territory, that therefore it never should begin so to do. We cannot see that because some or all go unpunished for a while, we are to imply a license *ad libitum* to commit offenses. The mildness of the government in the instance of this Territory was extraordinary and perhaps commendable, but that mildness ought not to be allowed as a plea of waiver by the government of its rights. It might be a strong plea for pardon in case of criminal charge, but it has no effect upon the rights of the government.

The judgment of the court below is affirmed, with costs.

SCHAEFFER, C. J., and EMERSON, J., concur.