Kirkpatrick C. J.
This is an action on the case for a malicious prosecution. The plaintiff, in his state of demand, sets forth in substance, that the defendant, of malice and without probable cause, on the tenth day of June 1813, instituted an action against him for 99 dollars,' in the court of James B. Stafford, esq. one of the justices of the peace of Monmouth county, by a summons returnable on the 29th of the same month-; that upon the return day of the summons, the defendant procured the cause to be adjourned till the 10th of July following, and that on that day he did not appear, but made default and became nonsuited ; that on the 17th day of July, the said defendant again of malice and without probable cause, instituted another action against him in the court of the said James B. Stafford for'99 dollars, by a summons returnable on the 27th of that month ; that on the return day of this summons the defendant again procured an adjournment until the 7th of August, then next, and on that day voluntarily discontinued his suit; whereby the said plaintiff says he is greatly injured, and hath damage to 100 dollars.
Upon this state of demand, this cause came on to be tried by a jury of the country, on the 21st of September 1813, when a verdict was found and a judgment rendered for the plaintiff for 50 dollars.
*There are several reasons assigned for the reversal of this judgment, but the one principally relied upon, and the only one of which I shall take notice, is the fourth, that is to say,
*379 Because the state of demand is illegal and insufficient, and contains no lawful cause of action.
The cause lias been twice argued at the bar upon this reason; the last time at the request of the court, and with much ability.
The books have been searched for four hundred years back, and upon that search it is conceded even by the counsel for the plaintiff below, himself, that no case can be found in which this action has been maintained, in circumstances similar to the present. It is true that there are general expressions made use of by some of the annotators, which might seem, at first view, to embrace the case, as in Hargrave’s Notes upon Co. Lit. 161, and some others; so also in some of the reporters ; but th, se general expressions, by fair rules of construction, are to be limited, and compared with the adjudged cases themselves, and not to be carried beyond them. With such limitations, of which too they will very fairly admit,, they are perfectly consistent with general principles; but without it they are not law.
Formerly the amercement, now the costs are the only penalty the law has given against a plaintiff for prosecuting a suit in a court of justice, in the regular and ordinary way, even though he fail in such prosecution. The courts of law are open to every citizen, and he may sue toties quoties upon the penalty of lawful costs only. These are considered as a sufficient compensation for the mere expenses of the defendant in his defence. They are given to him for this purpose, and he cannot rise up in a court of justice and say the legislature have not given him enough. If we were legislators, indeed, perhaps we should be inclined to say that the costs, in all cases where costs are given, should completely indemnify the party for all his necessary expenses, both of time and money; but those to whom this high trust is committed, in this state, have thought, and we will presume, have wisely thought otherwise. In England, it is believed, the costs are in some measure discretionary with the court, and are apportioned to the circumstances of the case, but here it is not so. They are fixed by statute, they can neither be increased nor diminished, but, ceteris paribus, are precisely the same *380 in all cases. Perhaps a greater latitude given to the courts jus*tice, might in some degree alleviate the hardship now complained of.
Besides, if we go to the very equity of the thing, which seems to be the ground of argument here taken, the same reasoning which is here used to prove that the defendant ought to have damages upon a false claim, would also prove that the plaintiff ought to .liave damages upon a false pleat He is put to all the expense of a trial upon such plea, and yet he can recover nothing therefor but his lawful costs. Though surely all experience teaches us that the plea of the defendant is not less frequently false than the claim of the plaintiff. But to what excesses would this lead us? where would litigation end? The truth is, that merely for the expenses of a civil suit, however malicious and however groundless, this action does not lie, nor ever did, so far as I can find, at any period of our juridical history. It must be attended, besides ordinary expenses, with other special grievance or damage not necessarily incident to a defence, but superadded to it by the malice and contrivance of the plaintiff; and of these an arrest seems to be the only one spoken of in our books.
In the case of Savil v. Roberts, in the time of, Wm. Ill, Salic. 15, which seems to be a leading case on this subject, Holt, chief justice, says, “ A civil action differs very far from an indictment in this respect. In a civil action, the defendant has his costs and the plaintiff is amerced for his false'claim. To bring a civil action therefore, though there be no ground, is not actionable, because it is a claim of right in the king’s courts to which every subject may resort, and he has found pledges, is amercible for his false claim and liable to costs. It is not enough to declare that such action was ex malitia et sine causa, per quod, he was put to great charges; he must go further, he must shew special grievance, as that the prosecutor had no cause of action, or cause of action only to a small sum, and that he had sued out a latitat for a large sum with intent to imprison him, or do him some special prejudice.
So in lord chief baron Gilbert’s report of the case of Parker v. Langley, Gil. Cases 161, about the close of Queen *381 Anna's reign, where this doctrine is investigated with much ability, Parker, chief justice, in giving the opinion of the court, says,
“ The applying, in a civil action, to a court of justice for satisfaction or redress, has been so much favoured, that no action has *ever been allowed against a plaintiff for such suit singly and directly on pretence of its being false and malicious
“ An action upon the case has not yet succeeded, but only where the plaintiff, in the first suit, made the course of the court, requiring special bail, a pretence for detaining another in prison, and where the malice was so specially charged; that it appeared that the end of the arrest was not the expectation of benefit to himself by a recovery, but a design of imprisoning the other.”
' I have had occasion to look into this doctrine once before, in the case of Woodmansie v. Logan, reported in Pen. 93. The opinion then expressed, is precisely the same which I now entertain upon looking further into the question, aided as I have been, by so careful an examination of books, and so able an argument at the bar.
Upon the whole, upon the strength of these authorities, I think it may be laid down as law, that this action cannot be maintained, for prosecuting a civil suit in a court of common law having competent jurisdiction, by the party himself in interest, unless the defendant has, upon such prosecution been arrested without cause and deprived of his liberty, or made to suffer other special grievance different from, and super added to the ordinary expense of a defence.
The case before us is for a suit commenced by summons, where there could be no arrest; nor does the state of demand set forth any grievance or damage, other than, or different from, the common expenses of making defence in suits of this kind. That the litigation was protracted as far as the rules of the court would adroit; that it was renewed and ultimately discontinued by the party, does not alter the case. These circumstances are at most, only evidence that the prosecution was malicious and without probable cause; but this is not enough, there must be special grievance, and that specifically charged in the complaint filed.
*382 Therefore, in my opinion, let the judgment be re-
Rossell J.
The reason why but few cases for malicious prosecution are found in the English reporters, is, that the costs are sufficiently great to deter men from bringing suits there merely for vexation. So in our courts of more extensive jurisdiction perhaps, no case can be shown of a person from malice only, ^prosecuting a suit, the costs of which would inevitably fall on himself. But since the jurisdiction of justices courts has been increased, many instances have arisen of persons being summoned from their homes thirty or more miles, to defend themselves against a groundless demand, maliciously contrived to harass and perplex them. Unprincipled men have frequently boasted on. some real or imaginary injury, that they would be revenged on their antagonists by harassing them with feigned demands, before justices 30 or 40 miles distant, as the costs would amount to a few cents only. If then, not a solitary case could be found in any English reporter, nor even the principle in terms hinted at, I should not hesitate to say, the action was maintainable on the principles of common sense, common right and common justice. But the principle is established in Hob. 206, 266. “ If a man sue me in a proper court; yet if his suit be utterly without ground and that certainly known to himself, I may have case against him for the undue vexation and damage he putteth me into by his ill practice. But two cautions are to be observed to maintain actions in these cases. 1. The new action must not be brought before the first be determined, because till then ^it cannot appear that the first was unjust. 2. That there must be, not only a thing done amiss, but also a damage, either already fallen on the party or else inevitable.”
This principle so clearly laid down by lord Hobart, though not frequently acted on for the reasons before mentioned, has not been lost sight of by the English courts. In 12 Mod. 4, it is said, “ The first point was at Hunting-don assizes, and referred to the Common Pleas, and there adjudged, that to sue a man without any cause of action *383 at all, no action lies, unless it appears to be with a malicious and vexatious design.”
12 Mod. 201. By Holt G. J. “ That notion that no action doth lie for bringing an action malicious is not to be taken largely and universally, but with some restrictions. If any special matter is shewn whereby it appears to the court that it was frivolous and vexatious, he shall have an action, but though this action does lie, yet it is not to be favoured and ought not to be maintained without rank and express malice and iniquity.
Cok. Lit. 161, Hargrave's Notes. “ There is also a remedy for a false or malicious suit, where the injury comes from one only, and in such case the party prosecuted may have an action *on the case for damages as well whore the vexation is practised by a civil suit, as if it was carried on through the medium of a criminal process. Indeed the numerous cases in the books are chiefly for criminal prosecutions, and lord Hobart, sergeant Rolle and lord Holt, all concur in the idea that when a civil suit is commenced falsely and maliciously, and for the mere purpose of vexation it is actionable. No man is punishable whether suing in a criminal or civil form, however false the suit may be in foundation, except by the payment of costs; but if the suit be malicious as well as false, he is on that account punishable.”
These high authorities so fully recognizing the principle, and placing it on the grounds of immutable justice as it respects the injured, and safety as it concerns the ignorant but innocent prosecutor, are completely satisfactory to my mind, and I have no hesitation in saying, that this action may in all proper cases be maintained.
Southard J.
I agree in opinion with the chief justice. The positions laid down by him I believe are law; and I cannot add to their elucidation.
Originally when a false claim was made, and vexatious suit carried on, the plaintiff was subject to amercement, but he was not subject to damages in addition. That was considered sufficient, and it was not the notion of those days to prevent men from applying to courts for a redress of their grievances.
*384 After the amercement fell into disuse, the legislature -interfered and gave costs; but for what purpose ? To compensate the party, for his ordinary and regular expenses in his suit; but not for any injury, out of the usual and common course of proceeding, in courts of justice. For such, it did not pretend to apply a remedy.
The legislature no doubt supposed, that it had given costs enough, to effect the purposes which it had in view. It did not intend, that the party should come in, say that the provision was not ample enough, that the costs did not satisfy his expenses, and therefore claim damages by suit, to correct the miscalculation of the legislature.
It was alleged however, in the argument at the bar, that in the court for the trial of small causes, no costs are really received by the defendant for his own benefit, and to pay his ex*penses; and therefore that he must be entitled to sue where he has been put to cost, in that court. The reasoning is fallacious. In this as in every other court, the legislature have fixed what costs shall be given. If it was thought best, that these costs should amount only to so much, as the party was obliged to pay to the officers and witnesses, &c., still it is a legislative determination of the matter, and parties have no right to object to it. Besides, quite as much money does go into the pockets of the parties in that court, as in any other. Parties no where, put money into their pockets by bills of cost; they never remunerate them, for time, labour or expense; they only amount to the sums lawfully due to the officers and witnesses.
In every suit, no matter how regular, or correct in law and justice, both plaintiff and defendant are compelled to submit to a considerable amount of expenses, which bills of cost, never can reach, nor ever were designed to reach. I cannot believe that the defendant can recover these expenses by suit, where he can prove that the plaintiff maliciously sued him. This would neither be lawful or expedient. He must be able to shew something more, as arrest or special grievance. Those cases which were cited to shew that expense alone was sufficient to maintain the action, do not contradict this *385 position. They are all criminal cases or refer to, and are founded on them. '
Saville v. Roberts, (Salk. IB) was a case of indictment, and it is said, that though the indictment do not produce scandal or imprisonment, yet the expense incurred by the groundless prosecution, will support the action; yet this very case draws the distinction between civil and criminal prosecution, and says ‘'that in the civil suit, an arrest is necessary.” If so, expense alone is not sufficient.
So also the case in 10 Mod. 148, 214, decided shortly after that of Saville and Roberts.
So in Str. 977, there was a criminal prosecution of the wife, and the husband was put to expense. So in all the other cases to which I have been able to refer; yet on these cases, writers found their dicta, that expense is a sufficient foundation for this action. It is not so, where there was not a criminal prosecution, and where there is onfy the ordinary expense and grievance of the suit, to be complained of.
There is a very short, and not very clear case, in a late re*porter of the decisions of this court, I mean Taylor v. Wilson. 1 Coxe 362, which seems to express the opinion of the court, on this subject, at a former day. The action was brought to recover back costs and expenses, to which the plaintiff had been put, in defending himself in a suit, where the court declared, there was no cause of action. The court say ; “ No action lies for such expenses, though, there can be no doubt, Wilson has been injured.”
It is not unlikely that some of the inconveniencies which have been mentioned at the bar, will result from the doctrine now established, in the court for the trial of small causes. Unprincipled men, are often to be found in every society, who, for the sole purpose of vexing and harassing a neighbour, whom they dislike, will bring many malicious suits, if the only evil they are to suffer, is the payrnem, of the costs in that court. But the contrary doctrine would lead to consequences not less unpleasant; and if this were not so, we cannot here remedy the evil. B3r enlarging the jurisdiction of justices, and giving almost nominal costs, the legislature have *386 offered temptations to the malignant, to bring vexatious suits. Higher costs would repress this feeling. It is only in that court that such suits are heard of. But the law, I conceive, to be clear; and if remedy be necessary, it must come from a different authority from this .court.
Judgment reversed.